Dear Ms. McGee:
We are in receipt of your recent correspondence to this office, requesting our opinion on the legality of appointments already made and appointments proposed to be made to the Ville Plate Fire and Police Civil Service Board and the Ville Platte Municipal Civil Service Board.
First, you advise that you are being considered for appointment to either the fire and police civil service board or the municipal civil service board. You currently have a professional services contract with the municipality of Ville Platte, a copy of which we have been provided. Further, you advise that you have recently been appointed by the Governor to serve on both the Juvenile Justice and Delinquency Prevention Advisory Board and the Safe and Drug Free School and Communities Advisory Council.
We first address your potential appointment to the fire and police civil service board. The City of Ville Platte is governed by the provisions of R.S. 33:2531, et seq., regarding fire and police civil service law. R.S. 33:2536 concerning the composition of the board governs our response and pertinently states:
§ 2536. Fire and police civil service boards
 A. A fire and police civil service board is hereby created in the municipal, parish, or fire protection district which shall be composed to five members who shall serve without compensation. This board shall have a chairman, vice-chairman and a secretary. The domicile of the board shall be within the area it serves.
* * * * *
 (c) No member of a board shall be a candidate for nomination or election to any public office or hold any other public office or position of public employment, except that of notary public, a military or naval official office, or that of a municipal, parish, or fire protection district fire or police department which is expressly required by the provisions of this Part.
Your status as independent contractor with the city is not considered public employment as defined by law.[1] Further, such a relationship is beyond the scope of the state Dual-Officeholding and Dual Employment Laws, R.S. 42:61, et seq. "An independent contractor, as opposed to a servant (employee), usually contracts to do a specific amount of work according to his own methods. The employer exerts little control over the action of the independent contractor. Mode of payment is not decisive in determining whether an employee is actually an independent contractor, though payment by the job indicates the existence of an independent contractor/employee relationship." See Attorney General Opinion 80-413, copy attached.
Thus, your contractual relationship with the city does not disqualify you from appointment to the fire and police civil service board. Note here that our legal analysis concerning the holding of multiple positions is limited to the application of our dual officeholding laws. You must consult the Commission on Ethics for Public Employees (255-763-8777) concerning possible application of the Louisiana Code of Governmental Ethics to the facts at hand.
Your recent appointments by Governor Kathleen Blanco to both the Juvenile Justice and Delinquency Prevention Advisory Board[2] and the Safe and Drug Free School and Communities Advisory Council[3] prove problematic vis-á-vis the fire and police civil service board. We consider both positions to be public appointive offices as defined by R.S. 42:62(2)[4] and R.S. 42:1[5]. Your acceptance of any public office disqualifies you from consideration for membership on the fire and police civil service board.
Similarly, your state appointments disqualify you from service on the municipal civil service board. Act 723 of the 1974 Regular Legislative Session created the Municipal Employees' Civil Service for Ville Platte, and provides in Section 3(B) in pertinent part:
 . . . No member of the board shall have been, during a period of four years immediately preceding his or her appointment, nor shall be during his or her tenure, a member of any local, state or national committee of a political party, or an officer or member of a committee in any factional or political club or organization, or actively interested or participating therein. No member of the Board shall be a candidate for nomination or election to any public office or hold any other public office or position or public employment, except that of notary public, military officer or member of the faculty of any educational institution. (Emphasis added).
Because you hold public office as a member of the advisory councils referenced, you are not eligible to serve on the municipal civil service board.
We address only those dual officeholding questions which are personally applicable to you. However, we are ready to give an expedited response concerning the other issues presented, if formally requested by the Mayor of Ville Platte, or other appropriate individual.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ______________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
[1] R.S. 42:62 defines "employment" as "any job compensated on a salary or per diem basis, other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof.
[2] The Juvenile Justice and Delinquency Prevention Advisory Board derives original authority under the federal Juvenile Justice and the Delinquency Prevention Act of 1974 (42 U.S.C. § 5601. et seq.) The composition of the state board is set forth in 42 U.S.C. § 5633(A), providing:
(A) shall consist of not less than 15 and not more than 33 members appointed by the chief executive officer of the state.
(i) which members have training, experience, or special knowledge concerning the prevention and treatment of juvenile delinquency, the administration of juvenile justice, or the reduction of juvenile delinquency;
(ii) which members include
(I) at least 1 locally elected official representing general purpose local government;
(II) representatives of law enforcement and juvenile justice agencies, including juvenile and family court judges, prosecutors, counsel for children and youth, and probation workers;
(III) representatives of public agencies concerned with delinquency prevention or treatment, such as welfare, social services, mental health, education, special education, recreation, and youth services;
(IV) representatives of private nonprofit organizations including persons with a special focus on preserving and strengthening families, parent groups and parent self-help groups, youth development, delinquency prevention and treatment, neglected or dependent children, the quality of juvenile justice, education, and social services for children;
(V) volunteers who work with delinquents or potential delinquents;
(VI) youth worker involved with programs that are alternatives to incarceration, including programs providing organized recreation activities;
(VII) persons with special experience and competence in addressing problems related to school violence and vandalism and alternatives to suspension and expulsion; and
(VIII) persons with special experience and competence in addressing problems related to learning disabilities, emotional difficulties, child abuse and neglect, and youth violence;
(iii) a majority of which members (including the chairperson) shall not be full-time employees of the Federal, State, or local government;
(iv) at least one-fifth of which members shall be under the age of 24 at the time of appointment; and
(v) at least three members who have been or are currently under the jurisdiction of the juvenile justice system;
[3] The composition of the Safe and Drug Free School and Communities Advisory Council is established by Executive Order MJF 96-6, providing:
SECTION 1: The Governor's Advisory Council on Safe and Drug-Free Schools and Communities is hereby continued with the Governor's Office.
SECTION 2: The council shall be composed of 13 members, each of whom shall be appointed by the governor to serve at his pleasure. The governor shall designate one member to serve as chairman of the council.
SECTION 3: The duties of the council shall include but not be limited to the following:
A. Assist in setting priorities for the state's Safe and Drug-Free Schools and Communities Act program.
B. Contribute to the design of Requests for Proposals.
C. Review and make recommendations on proposals.
D. Review monitoring reports on grantees.
E. Recommend disposition of contracts in the case of non-complying agencies.
[4] R.S. 42:62(2) defines appointive office as: "any office in any branch of government or other position on an agency, board, or commission or any executive office of any agency, board, commission, or department which is specifically established or specifically authorized by the constitution or laws of this state or by the charter or ordinances of any political subdivision thereof and which is filled by appointment or election by an elected or appointed public official or by a governmental body composed of such officials of this state or of a political subdivision thereof."
[5] R.S. 42:1 defines public office as "any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state.
"Public officer" is any person holding a public office in this state.
OPINION NUMBER 80-413
April 7, 1980
78 — Officers — Dual Officeholding
22-B — Education Colleges and Other Higher Education
10-A — State Employees and Dependants
Full time or part time state employees may not also be employed by branch of Federal government.
State employee may serve as independent contractor to Federal Government establishment.
Mr. James R. Patin Vice Chancellor for Business Affairs LOUISIANA State University Medical Center 1440 Canal Street Suite 1510 New Orleans, LOUISIANA 70112
Dear Mr. Patin:
In your letter of March 20, 1980, you requested an opinion clarifying Act 700 of 1979; the comprehensive dual officeholding provision. Specifically you asked if:
 1. Faculty members of the LSU Medical Center may be full-time or part-time employees of the Veterans Administration Medical Center?
 2. Faculty members of the LSU Medical Center may receive consultation income from Veterans Administration?
 3. Part-time university employees may be employed full-time by Veterans Administration?
The Veterans Administration is an independent establishment in the executive branch of the federal government. Congress created the Veterans Administration by statute, 38 U.S.C. § 201, to deal with laws which provide benefits for veterans.
The LOUISIANA State University is within the executive branch of state government.
Dual officeholding prohibitions are provided for in R.S. 42:63. Subsection (A) of the statute states in part:
 `No person holding . . . employment in any of the branches of state government . . . shall at the same time hold . . . employment . . . in the government of the United States . . .'
Employment is defined in R.S. 42:62(3) as
 '. . . any job compensated on a salary or per diem basis other than an elective or appointive office, in which a person is an employee of the state government or of a political subdivision thereof.'
In answer to your first question, faculty members of the LOUISIANA State University Medical Center may not also serve as full-time or part-time employees of the Veterans Administration. The faculty members hold employment in state government and therefore, on the basis of R.S.42:63(A), they may not also hold employment in Veterans Administration which is established in a branch of the federal government.
As to your second question, faculty members of the LOUISIANA State University Medical Center may receive consultation income from Veterans Administration of the consultant is acting as an independent contractor rather than as an employee of the Veterans Administration. Such a relationship is beyond the scope of the dual officeholding provisions. Attorney General's Opinion Number 79-1440 supported this contention and cited factors indicating the presence of the independent contractor/employee relationship. The opinion stated:
 `An independent contractor, as opposed to a servant (employee), usually contracts to do a specific amount of work according to his own methods. The employer exerts little control over the actions of the independent contractor. Mode of payment is not decisive in determining whether an employee is actually an independent contractor, though payment by the job indicates the existence of an independent contractor/employee relationship.'
These factors do not constitute the sole criteria in ascertaining the presence of an independent contractor/employee relationship.
However, they provide proper guidelines for consideration in determining whether the LOUISIANA State University faculty member is acting as an independent contractor or employee with respect to the Veterans Administration.
Question three must receive the same answer as question one. Revised Statute 42:63(A) makes no distinction between full time and part-time state employment. A state employee may not also be employed in a branch of the federal government.
In conclusion, dual officeholding provisions prohibit full-time and part-time employees of the state from simultaneously holding employment in a branch of the federal government. There are no relevant statutory exceptions to this prohibition. Revised Statute 42:63(B) allows an employee of an educational institution to simultaneously hold an elective or appointive office. However, this exception is inapplicable to the present opinion which relates only to employment possibilities. Prohibited dual officeholding does not arise if the state employee is merely acting as an independent contractor for the Veterans Administration.
Very truly yours,
 William J. Guste, Jr. Attorney General
 By: Kenneth C. DeJean Assistant Attorney General
La. Atty. Gen. Op. No. 80-413, 1980 WL 115908 (La.A.G.)